

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Paul Riley*                                    *Suite 400*                          *DIRECT: 410-209-4959*
*Assistant United States Attorney*              *36 S. Charles Street*                *MAIN: 410-209-4800*
*Paul.Riley @usdoj.gov*                          *Baltimore, MD 21201-3119*            *FAX: 410-962-3091*

**VIA ECF**                                                      March 13, 2020

The Honorable George L. Russell III
United States District Judge
United States District Court
for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Re:     *United States v. Benjamin Anthony Wiggins*, Criminal No. GLR-19-142
        *United States v. Benjamin Anthony Wiggins*, Criminal No. GLR-09-649

Dear Judge Russell:

 The Government writes this letter in advance of the sentencing of the Defendant Anthony Wiggins, which is currently scheduled for March 27, 2020 at 2:00 PM.

 On December 9, 2019, the Court accepted the Defendant's guilty plea in case number GLR-19-142 to Counts Six and Seven of the Indictment charging him with Interference with Commerce By Violence, in violation of 18 U.S.C. § 1951(a), and Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Furthermore, pursuant to the parties' plea agreement, the Defendant will admit to violating the conditions of his supervised release in case number GLR-09-0649 (the "VOSR case") and will be sentenced in connection with the VOSR case on March 27, 2020 at 2:00 PM as well.

 As set forth more fully below, the Government requests that the Court sentence Defendant to 228 months' (19 years') imprisonment as to case number GLR-19-142 and 24 months' consecutive as to the VOSR case.

  **I. Background**

 As detailed in the parties' plea agreement dated November 25, 2019 (ECF No. 33) and the presentence investigation report ("PSR") filed February 6, 2020 (ECF No. 38), beginning on October 4, 2018 and continuing through November 15, 2018, Defendant robbed or attempted to rob 11 banks, liquor, and convenience stores in the greater Baltimore area. Defendant was on federal supervised release at the time of the robberies, having previously sustained a conviction for being a felon in possession of firearm.

 During each of the liquor store robberies, Defendant brandished a firearm and, in two instances, discharged the firearm during the robberies. In nearly all of the robberies, Defendant threatened victim employees with physical violence and, during one robbery, fought with and assaulted a store customer and a victim employee. Each of the robberies is described in further detail below.

 On September 24, 2018 at approximately 3:00 P.M., Defendant robbed the Howard Bank – White Marsh Branch, located at 10101 Philadelphia Road, Rosedale, Maryland 21237. Defendant was wearing a purple knit cap, and a grey pull over hoodie sweatshirt with a

"Champion" script logo printed in white on center chest, front pocket and hood pull strings, and blue jeans with a faded distressed design.  He entered the bank and appeared to fill out a withdrawal slip at the customer service counter.  He approached the teller and handed a withdrawal slip and a note that read in substance, "At all times U don't hit the button or notify the police. I need 4 1000-dollar stacks in large bills. I have a police scanner and if U notify the police I will know.  If it comes up on the scanner I will come back and it doesn't have to be today. I have a gun and will shot U dead."

The teller complied and gave Defendant $4000.00 in U.S. currency from the till.  Defendant took the note back and left the bank.  A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 1.



On Thursday, October 4, 2018 at approximately 9:47 A.M., Defendant robbed the Chesapeake Bank of Maryland – Arbutus Branch, located at 5424 Carville Avenue, Arbutus, Maryland 21227.  Defendant was wearing a black baseball cap and a black, pull over hooded sweatshirt.

Defendant entered the bank and appeared to fill out a withdrawal slip at the customer service counter.  He approached the teller, and handed her a note that read in substance, "I have a police scanner in the car, give me $10000.00 and no dye packs."  The teller complied and gave Defendant $4460.00 in U.S. currency from the till.  Defendant took the note back and left the bank.

A surveillance still from the robbery is below, and further surveillance images are attached as Exhibit 2.



On October 11, 2018, at approximately 1:40 P.M., Defendant attempted to rob the Kopernik Bank, located at 6201 Eastern Avenue, Baltimore, Maryland 21224.  Defendant was wearing a black baseball cap and a black, pull over hooded sweatshirt.

Defendant entered the bank and approached the victim teller at her window.  He demanded money from her drawer, at which time the victim teller walked away to press the alarm.  Defendant then physically grabbed a female customer at the other end of the counter to intimidate the teller to comply with his demands for money.  Defendant eventually released the customer and left the bank without obtaining any money.  He fled the area in a Chevrolet Impala, which belonged to his girlfriend at the time, S.W.

A surveillance still from the robbery is below, and additional surveillance stills are attached as Exhibit 3.



Later that same day, October 11, 2018, at approximately 2:15 P.M., Defendant robbed the First National Bank – Dundalk Branch, located at 7546 Holabird Avenue, Dundalk, Maryland 21222.  Defendant was wearing a black baseball cap and a black, pull over hooded sweatshirt.

He entered the bank and appeared to fill out a withdrawal slip at the customer service counter.  Defendant approached the teller and handed a withdrawal slip and a note that read in sum and substance, "NO alarms, I have a gun, all large bills only, you only have a minute."  The victim teller reported the withdrawal slip had $10,000.00 printed on it.  The teller complied and opened her drawer, at which time Defendant stated, "Make it $20,000.00."  The teller gave Defendant $8,810.00 in U.S. currency from her drawer.  Defendant took the money, note, and withdrawal slip and left the bank. He fled in S.W.'s Chevrolet Impala.

A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 4.



On October 18, 2019, at approximately 10:14 A.M., Defendant robbed the Harford Bank, located at 505 South Main Street, Bel Air, Maryland, 21014.  His face was covered with a black bandana and he wore a black hat, a grey hoodie sweatshirt with an Amazon Baltimore Fulfillment Center logo on it, which belonged to S.W.  He wore a glove on one of his hands.

He entered the bank, approached the victim teller, yelled at her saying "hand over all the money bitch," and threw a bag at her.  The victim teller complied, placing $13,159.00 in United States currency from the till into the bag.  Defendant then fled.

A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 5.



On November 2, 2018, Defendant robbed the Modern Discount Liquors store, located at 6916 Holabird Avenue, Dundalk, Maryland 21222.  He was wearing a dark grey hooded sweatshirt with the hood pulled up over his head, dark sweat pants, and grey shoes.  He had a black mask or handkerchief/bandana wrapped around his lower face and mouth.

At approximately 6:55 P.M., one of the victim employees went outside the front of the store to smoke a cigarette and, soon thereafter, was confronted by Defendant.  Defendant pulled out a dark semi-automatic handgun and ordered her back into the store.

Once in the store, Defendant brandished the firearm and demanded money from the sales register.  He produced a blue plastic bag with "LIDS" logo printed in white letters on it from his sweatshirt pocket.

He then pointed his handgun at another employee as she stood behind the sales register and ordered her to give him all the money from the sales register.  She complied and gave Defendant approximately $300.00 in various denominations of U.S. currency, and placed it into the Lids bag, which Defendant was holding open.

Defendant then ordered a victim employee to remove the money from the Check Cashing Register.  She complied with his demand, opened the sales registers, and removed approximately $2,500.00 in various denominations of U.S. currency and placed it in the Lids bag.

As Defendant was taking the money, the store owner was alerted to the robbery.  He went to his office and retrieved his own handgun.  He attempted to slowly move toward Defendant from the back of the store.  He pointed his handgun at Defendant.  Defendant yelled, "I see you! I see you!," as he turned and pointed his firearm at the owner.  Defendant took the bag of money and backed out of the store.  As he fled, Defendant ran past a side entrance door and discharged his firearm, firing one round through the doorway of the store.  The primary door was open, so the

bullet traveled through the screen door, across the kitchen area, through the kitchen wall, and finally came to rest in the beverage refrigerator in a six pack of beer.

Defendant fled in his silver Mercedes-Benz vehicle. Surveillance stills from the robbery are below, and the surveillance footage is attached as Exhibit 6.[1]





On November 8, 2018, at approximately 8:00 P.M., Defendant again robbed the Modern Discount Liquors store, located at 6916 Holabird Avenue, Baltimore, Maryland 21222. He was wearing a dark knit cap, a dark hooded sweatshirt and dark shoes. He was also wearing a black mask or handkerchief wrapped around his lower face and mouth.

Defendant entered, pointed his semi-automatic firearm and stated to the victim employees, "You know what to do, I will shoot you, put the money in the bag." He produced a blue plastic bag with a "LIDS" logo printed in white letters on it. Defendant handed the bag to a victim employee and ordered the victim employees to put the money into bag. At the same time, he pointed his firearm at them.

One of the victim employees complied with Defendant's demand, opened the sales registers, and removed approximately $1000.00 in various denominations of U.S. currency from the sales register. She placed the money in the Lids bag and handed the bag to Defendant.

Defendant then fled the store. A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 7.

---

[1] Defendant can be seen in the second surveillance still image discharging his firearm into the store.



On November 10, 2018 at approximately 7:11 P.M., Defendant robbed Dundalk Liquors, located at 12 Dundalk Avenue N., Dundalk, Maryland 21222.  He was wearing a dark knit cap, a dark hooded sweatshirt and dark shoes with a light color trim.

Defendant entered the store, approached a victim employee, and pointed his semi-automatic firearm at him, stating, "Give me all the money."

The victim employee complied, opened the sales register, removed approximately $1700.00 in various denominations of U.S. currency from the sales register, and gave Defendant the money.  Defendant then fled the store. A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 8.



On November 13, 2018 at approximately 11:45 A.M., Defendant robbed the Oak Grove Liquors store, located at 300 Holly Drive, Middle River, Maryland 21220.  He was wearing a dark knit cap, a dark two-tone hooded sweatshirt, and a black mask or scarf wrapped around his lower face.  Defendant carried a semi-automatic firearm.

Defendant entered the store, approached victim employees, and immediately pointed a firearm at them.  He produced a blue plastic bag with a "LIDS" logo printed in white letters on it,

from his sweatshirt pocket.  Defendant threw the bag on the counter and ordered the victims to, "Get the money, and put it in the bag."

At this point, two store customers started to walk towards the front register.  Defendant then pointed the firearm at them, and he ordered them not to move.

The victims complied with the demand, opened the sales register, removed approximately $1100.00 in various denominations of U.S. currency from it, and placed the money in the Lids bag.  Defendant took the bag containing the money, left the store, and fled in his Mercedes-Benz car.  A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 9.



On November 13, 2018, at approximately 8:27 P.M., Defendant robbed the House of Spirit Liquor Store, located at 2300 Fleet Street, Baltimore, Maryland 21224.  Defendant was wearing a dark knit cap, a dark hooded sweatshirt and dark shoes.  Defendant was wearing a black mask or handkerchief wrapped around his lower face and mouth.  He carried a semi-automatic firearm.

Defendant entered the store, and immediately brandished his firearm, pointing it at a victim employee, stating, "Give me all the money or I'll shoot you."  He produced a blue plastic bag with a "LIDS" logo printed in white letters on it, gave it to the victim employee, and ordered him to put the money into it.

The victim complied, opened the sales registers, and removed approximately $4,000.00 in various denominations of U.S. currency.  The victim placed the money in the bag and handed the bag to Defendant.  Defendant then ran out of the store.

The victim then grabbed his own firearm and gave chase.  Defendant saw the victim employee following him, and Defendant discharged his firearm in the general direction of the employee, who ultimately returned to the store.

Defendant ultimately fled the scene in his silver Mercedes-Benz car.  A surveillance still from the robbery is below, and the surveillance footage is attached as Exhibit 10.



On November 15, 2018 at approximately 7:23 P.M., Defendant attempted to rob George's Liquors store located at 2101 Merritt Avenue, Dundalk, Maryland 21222.  Defendant was wearing a dark knit cap, a dark hooded sweatshirt and a black mask or scarf wrapped around his lower face. He carried a semi-automatic firearm.

He entered the store and approached a victim employee at the sales register, immediately pointing the firearm at the victim and demanding money.  He produced a blue plastic bag with a "LIDS" logo printed in white letters on it from his sweatshirt pocket and threw the bag on the counter.

Defendant then turned to a store customer, stated, "this is a robbery," and ordered the victim to empty his pockets.

The store owner, who was in the rear of the store, saw Defendant pointing the firearm at his wife.  He grabbed his firearm, approached Defendant from behind, and told Defendant to drop his gun.

Defendant then pointed his firearm at the victim store owner and the Defendant and the store owner began to fight with each other, physically struggling for control of each other's guns. A store customer assisted the store owner.  During the struggle, the owner's firearm discharged and struck the floor in front of the sale's counter.

Photos of the Good Samaritan's injuries are below and speak for themselves.

 

Defendant eventually escaped with his firearm, though the magazine to the firearm was dislodged during the fight.  He then fled.  Surveillance stills from the robbery are below, and the surveillance footage is attached as Exhibit 11.









**Search Warrant, Arrest, And Statement**

On November 16, 2018, law enforcement executed a state warrant for Defendant's arrest and a state search warrant for Defendant's residence located at 1406 Anglesea Street, Apartment 2D, Baltimore, Maryland 21224, along with his silver Mercedes-Benz.

Law enforcement recovered numerous items of evidentiary value during the search, including the firearm used during all of the robberies—a silver and white 9mm PF940C Polymer80 Inc. firearm with no serial number—ammunition, and clothing and footwear worn during the robberies.  Photos of the Polymer 80 firearm are below:






A hooded sweatshirt seized that day, which was worn during the robberies, was DNA tested; Defendant's DNA was present on it, as was the DNA of one of the victims whom Defendant had fought with during the George's Liquor's store robbery the previous day.

Defendant was transported to the Baltimore County Police Department, where he voluntarily waived his *Miranda* rights and agreed to speak with investigators.  He told law enforcement that he was a drug dealer and falsely claimed, among other things, that (1) he had not been involved in any robberies; and (2) he "found" the firearm seized from his home the previous night.  However, he admitted to possessing the firearm, stating that he would "plead out" on a handgun charge and also admitted to shopping at the LIDS store.

## II.     Guidelines Computation

Under the U.S. Sentencing Guidelines, the Defendant's offense level under the PSR as to Count Six—Interference With Commerce By Violence—in violation of 18 U.S.C. § 1951(a)—is correctly calculated at an adjusted level of 29, after taking into account relevant conduct, grouping, and acceptance of responsibility. *See* PSR ¶¶ 58-139. As to Count Seven, the guideline sentence is the term of imprisonment required by statute—120 months' imprisonment consecutive to any other sentence. *Id.* ¶ 140.

The Defendant is a Criminal History Category III. *Id.* ¶ 153. Thus, the applicable guideline imprisonment range as to Count Six is 108 to 135 months, and the guideline imprisonment range as to Count Seven is 120 months' imprisonment consecutive to the sentence in Count Six. *Id.* ¶ 210. The final guideline imprisonment range is 228 months to 255 months (19 to 21.25 years).

As to the VOSR case, the most serious grade of violation, Grade A, is applicable here, and the criminal history category applicable at the time the Defendant was originally sentenced to the term of supervision was V. Accordingly, pursuant to U.S.S.G. § 7B1.4, the term of imprisonment applicable under the guidelines upon revocation of supervised release is 24 months' imprisonment. PSR ¶ 212.

## III.     Sentencing Factors Under 18 U.S.C. § 3553(a)

The nature and circumstances of the Defendant's offense strongly weigh in favor of the Government's recommended sentence of 228 months' imprisonment as to case number GLR-19-142 and 24 months' consecutive as to the VOSR case.

There is no question that Defendant's offense is serious. Less than four months after beginning his period of supervised release after serving a 10 year sentence in connection with a conviction for being a Felon in Possession of a Firearm,[2] Defendant robbed or attempted to rob 11 banks and liquor stores—brandishing a firearm during a majority of the robberies, discharging it during two others, and engaging in a violent struggle with a bystander and a storeowner during still another robbery.

It is hard to imagine a more serious offense than discharging a firearm in the direction of another human being during a robbery—precisely what Defendant did here. Defendant did not hesitate to pull that trigger to help him keep the money he had obtained and to help facilitate his escape. Nor did he hesitate to bring the same firearm to four other robberies—heightening the risk of danger to the innocent employees in the stores. Indeed, one of the reasons firearms are regulated federally is because they are inherently dangerous. The use of a firearm to commit a robbery heightens that danger: Regardless of whether an assailant intends to use the gun, the presence of a firearm creates an unacceptable risk that an innocent victim will be seriously hurt or killed. That risk was undeniably present here.

And even in the bank robberies where Defendant did not have a gun, he engaged in conduct meant to instill maximum fear in the victim employees. For instance, during the Howard Bank robbery on September 24, 2018, Defendant's demand note stated that he had a gun, and it threatened that he would come back and shoot the victim teller if she notified the police. During the October 11, 2018 robbery, Defendant manhandled a female bank customer to intimidate the victim teller to comply with his demands for cash. Later that day, during his robbery of the First National Bank, Defendant stated in his demand note that he had a gun and that the victim teller only had a minute to comply with his demand for cash. During the October 18, 2018 robbery of the Harford Bank, he

---

[2] The Defendant was originally sentenced by Judge Quarles. Supervision commenced on June 1, 2018.

yelled at the victim teller, saying "hand over all the money bitch," threw a bag at her, and pointed aggressively.

All of the victim employees[3] in this case were simply doing their jobs when Defendant entered their lives and threatened them with physical violence and, in certain circumstances, even death if they did not comply with his demands.  Being robbed—whether the robbery is an armed robbery or not—is a terrifying life-changing experience, that can forever alter one's sense of personal safety and well-being.  Indeed, based on the victim impact statements provided to the Court, the victims' lives have been impacted as a result of Defendant's conduct.

H.A., the owner of the House of Spirits at whom the Defendant discharged his firearm, remarked the incident caused him anger, anxiety, and depression and that the robbery was a factor in him getting a divorce.  H.C., the owner of George's Liquor with whom Defendant engaged in a violent struggle, noted that he suffered from fear, sleep loss, nightmares, trouble concentrating, and depression as a result of the incident.  He noted how during the struggle with the Defendant the Defendant's "gun was point[ed] at my chest," how he was "fighting for my life," and how his own firearm was discharged.  And H.C. noted how the Defendant pulled the trigger on his firearm during the struggle "to shoot me."  Luckily, the firearm's magazine was dislodged during the fight and the Defendant was unable to fire a shot.  Likewise, victim K.C. remarked that she suffered anxiety, fear, and depression after the robbery of the bank where she worked and how she was afraid to even leave her home after it.  She said, "[a]fter the robbery, I only left my house to go to work" and remarked that, while at work, the fear lingered as she wondered "will he come back again today or tomorrow."

Similarly, the cascading effects of such incidents cannot be understated.  Hard working victims of such robberies are forced to consider whether the risk of having a firearm fired or pointed at them is worth the money they otherwise need to earn for their families.  Businesses are forced to consider additional safety precautions, reassure concerned employees, and cover shifts when employees decide not to risk working there anymore.  And members of the public consider whether to avoid entering business in certain areas or perhaps avoid brick and mortar retail entirely because of the risk of violence.

There is no question that the cascading effects of the incident were felt here.  For instance, H.A. noted that "[b]usiness has been slow after the robbery" and how "[i]f something happened on the corner, everyone knows and it affects sales, and  you're not going to make any profits."  He further noted that he feels the need to wear bulletproof vest to work and carry a firearm on his hip.  He wrote, "[e]very business that pays taxes here in this city is in danger due to someone like [the Defendant]. If the local businesses are affected by high crime rate, how are they gonna survive?"  Victim K.C.

A guideline sentence is also sufficient (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, and (C) to protect the public from further crimes of the Defendant.

As an initial matter, the Defendant's offense easily could have led to violence and physical harm to the victim employees—had they not complied with the Defendant's demands— in addition to the emotional harm it caused them.  Indeed, a number of the victims are lucky not to have been shot or even killed during the course of their encounters with the Defendant.

---

[3] It is unclear at this time whether any victim will be present for sentencing.  The Government has provided notification to the victims and spoken with many of them.  A number of the victims stated that they never wished to see the Defendant again and expressed no desire to be present for sentencing.

Moreover, far from reflecting anomalous or aberrant behavior, the Defendant's robberies reflect premeditation, execution, and a series of deliberate choices made by the Defendant. The sheer number of robberies—11 over just a two month period—makes plain that the robberies were not a one-off situation. It's notable too that Defendant's behavior escalated as he continued to rob. He did not brandish a firearm during the bank robberies; rather, he passed notes that, at least in certain of the robberies, threatened a gun. But in each of the liquor store robberies, he made the choice to brandish a firearm that he used to threaten the victims to comply with his demands. He could have carried out these later robberies without a weapon; he chose not to. He could have carried out two of these later robberies without discharging his weapon; he chose not to. What's more, the Defendant planned his disguises—frequently covering his face with a handkerchief and bandana during certain of the robberies. Further, he planned his escape, using cars belonging to his girlfriend as getaway vehicles.

The seriousness of the offense is also reflected in the type of firearm that the Defendant used during the liquor store robberies:  An untraceable Polymer80 "ghost gun," with no serial number, and which can be assembled at home. *See* Ex. 12 ("There are two types of ghost guns: those made out of plastic with 3-D printers, and those made with kits that supply 80 percent of the gun — called the frame for handguns or the receiver for long guns — already cut out of metal or polymer. Some minor drilling and milling is needed to add the top 20 percent. Both the "80 percent lowers" and the 20 percent remainder — the trigger, the barrel and firing pin — are easily purchased online from companies such as Polymer80, 80% Lower and U.S. Rifle.").

The use of such untraceable firearms in Maryland is on the rise. Indeed, "Police in Prince George's County, Md., have found 63 ghost guns since the start of 2019, and Montgomery County, Md., has recovered 60 since the beginning of 2017." *Id.* While law enforcement was unable to determine how Defendant obtained this untraceable Polymer80 firearm, his possession and use of it in connection with the liquor store robberies is troubling to say the least. *Cf. United States v. Harris*, 720 F.3d 499, 502–03 (4th Cir. 2013) (noting that "[t]he Bureau of Alcohol, Tobacco, Firearms and Explosives has explained that requiring serial numbers on firearms serves the important governmental interests of enabling the tracking of inventory and record-keeping by licensees; tracing specific firearms used in crimes; identifying firearms that have been lost or stolen; and assisting in the prosecution of firearm offenses").

The sentence in this case must reflect the seriousness of the offense, taking into consideration the effect it had on the victims and should provide a just punishment for Defendant's offense. Further, Defendant's conduct in this case warrants the Court imposing a sentence that will both protect the public from Defendant's violent and threatening conduct and deter others who may consider armed robbery as a way to obtain money quickly.[4] The Government's recommended sentence accomplishes all of these goals.

Indeed, the need to protect society from this Defendant is particularly important in this case. As victim H.A. put it, "[t]his is somebody who has no fear and sees no value to someone else's life." Victim K.C. echoed this sentiment, noting the "havoc and chaos" caused by Defendant's actions. Defendant's conduct during the robberies—and particularly those in which he discharged his firearm—make plain his reckless disregard for the lives of other human beings. So too does his criminal history.

In 1999, the Defendant was convicted of Aggravated Assault While Armed, Receiving Stolen Goods, and Unauthorized Use of Auto. PSR ¶ 145. That incident involved a high speed chase, which resulted in an innocent pedestrian being struck and severely injured by a car driven

---

[4] Defendant claims that "financial pressure" caused him to the commit the robberies and that it was difficult for him to find employment. PSR ¶ 57. But Defendant *had a job* at the time he began the robbery spree. PSR ¶ 209. And, unlike many of the defendants who appear in federal court, he had his CDL too. *Id.*

by Defendant. *Id.* And, in 2010, he was convicted federally of being a Felon in Possession of a Firearm. *Id.* ¶ 150.[5] The incident giving rise to that conviction involved the Defendant fighting with law enforcement officers and even trying to escape—breaking free of his flex-cuffs and jumping into the Patapsco river. *Id.*[6] Defendant was sentenced to 10 years' imprisonment, the statutory maximum, for his offense. But he nevertheless continued to commit crimes and carry a firearm. Defendant's steady stream of criminal conduct is concerning.[7] His prior convictions paint the picture of a person who poses a danger to the community and has trouble living a law-abiding life for very long at all. Indeed, as noted above, he was on federal supervised release for just a few months before committing the crimes here.

Simply put, there is no evidence that the Defendant will ever be deterred from engaging in criminal conduct. A significant sentence is therefore necessary to ensure that Defendant does not simply return to the same criminal activity, as he did following every other encounter he had with the criminal justice system before this one.

Finally, the Defendant's childhood, which was undoubtedly difficult based on the PSR, perhaps provides some explanation for the Defendant's criminal history. But it certainly does not excuse it. While the offense conduct here and Defendant's criminal history might ordinarily justify a higher sentence, consistent with the parties' plea agreement and factoring in Defendant's difficult early life, the Government recommends a sentence at the low end of the guidelines range for Counts 6 and 7.

## IV.    The Government's Sentencing Recommendation

In light of all of the factors set forth above, the Government recommends that the Court sentence the Defendant to 228 months' (19 years') imprisonment as to case number GLR-19-142 and 24 months' consecutive as to the VOSR case.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:    _____/s/_____
       Paul Riley
       Mary Setzer
       Assistant United States Attorneys

cc:    Kirstin Hopkins, Esq., Ned Smock, Esq. (by ECF)
       Gina Swillo, U.S. Probation Officer (by electronic mail)

---

[5] The Defendant is no stranger to firearms, having obtained his first firearm conviction at age 19. *See* PSR ¶ 144 (Conviction for Carrying Pistol Without a License).

[6] The Defendant has a history of defying orders from law enforcement. *See* PSR ¶ 149 (defendant kicked side mirror off of police vehicle after being ticketed and had to be forced back into car while backup arrived).

[7] The Defendant has more than 15 past arrests—including for offenses involving firearms. PSR at 24-29.