IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal Action No. GLR-19-142 |
| ANTHONY EUGENE WIGGINS, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pending before the Court is Defendant Anthony Eugene Wiggins' Motion for Compassionate Release (ECF No. 96). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will deny the Motion.

## I.    BACKGROUND

On March 20, 2019, a Grand Jury issued a sixteen-count Indictment, charging Wiggins with bank robbery, attempted bank robbery, interference with commerce by violence, attempted interference with commerce by violence, discharging a firearm during a crime of violence, and brandishing a firearm during a crime of violence. (Indictment at 1–17, ECF No. 1).[1]

Wiggins was arraigned on August 2, 2019, and pleaded not guilty to the following counts in the Indictment: bank robbery in violation of 18 U.S.C. §§ 2113(a), (f) (Counts One, Two, Four, and Five); attempted bank robbery in violation of 18 U.S.C.

---

[1] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

§§ 2113(a), (f) (Count Three); interference with commerce by violence in violation of 18 U.S.C. § 1951(a) (Counts Six, Eight, Ten, Twelve, and Fourteen); discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Counts Seven and Fifteen); brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Nine, Eleven, and Thirteen); and attempted interference with commerce by violence in violation of 18 U.S.C.§ 1951(a) (Count Sixteen). (Id.; Arraignment at 1, ECF No. 18).

Wiggins was rearraigned on December 9, 2019, and, under a plea agreement, pleaded guilty to one count of interference with commerce by violence (Count Six) and one count of discharging a firearm during a crime of violence (Count Seven). (Rearraignment at 1, ECF No. 32; Plea Agreement at 1, ECF No. 33). Wiggins pleaded not guilty to all other counts in the same proceeding. (Plea Agreement at 1). Additionally, Wiggins pleaded guilty to violating his supervised release conditions in a separate criminal case.[2] (Id.).

The stipulated facts giving rise to the plea agreement are as follows:

> Beginning on October 4, 2018 and continuing through November 15, 2018, Defendant robbed or attempted to rob 11 banks, liquor, and convenience stores in the greater Baltimore area. Defendant was on federal supervised release at the time of the robberies, having previously sustained a conviction for being a felon in possession of [a] firearm. During each of the liquor and convenience store robberies, Defendant brandished a firearm and, in two instances, discharged the firearm during the robberies. In nearly all of the robberies, Defendant threatened victim

---

[2] On October 7, 2010, in the separate criminal case, this Court imposed a sentence of 120 months in prison, followed by three years of supervised release. See J. at 2–3, United States v. Wiggins, No. GLR-09-0649 (D.Md. Oct. 7, 2010) (ECF No. 33). The statutory conditions of Wiggins' supervised release included not committing any crime and not possessing a firearm or ammunition in a felony case. Id. at 3.

> employees with physical violence and, during one robbery, fought with and assaulted a store customer and a victim employee.

(Id. at 13). On November 12, 2020, the Court sentenced Wiggins to 228 months' imprisonment, followed by five years of supervised release. (Sent'g at 1, ECF No. 46; J. at 2–3, ECF No. 50).

Wiggins filed the instant Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act of 2018 on March 27, 2025. (ECF No. 96). The Court later appointed counsel to represent Wiggins in this matter. (ECF No. 99). Wiggins, through counsel, filed a Memorandum in Support of his Motion on August 21, 2025, in which he requests that this Court impose a sentence of time-served and modify his conditions of supervised release to require that the first six months of his release be served in a halfway house. (Mem. L. Supp. Def.'s Mot. Sentence Reduction ["Mem."] at 1–2, ECF No. 100). The Government filed an Opposition on September 25, 2025. (ECF No. 106). Wiggins filed a Reply on October 2, 2025, (ECF No. 112), and a Supplement to his Motion on November 18, 2025, (ECF No. 113).

## II.   STANDARD OF REVIEW

As a general rule, a district court "may not modify a term of imprisonment once it has been imposed," unless certain limited exceptions apply. United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)). 18 U.S.C. § 3582(c)(1)(A), or the compassionate release provision, however, empowers courts to use their discretion in deciding whether certain circumstances warrant a sentence reduction. See United States v. Maycock, No. GLR-14-133, 2020 WL 2395620, at *1 (D.Md. May 12, 2020). The First Step Act of 2018 amended and further expanded the

3

compassionate release provision, allowing federal inmates to file motions for sentence reductions without having to rely on the Bureau of Prisons ("BOP") to initiate any motion for compassionate release on the inmate's behalf. United States v. Gregory, 538 F.Supp.3d 562, 565–66 (D.Md. 2021).

Before moving for compassionate release, the defendant must either exhaust all administrative remedies or wait thirty days "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582 (c)(1)(A). The court must then determine if the defendant demonstrated "extraordinary and compelling reasons" supporting relief to be eligible for a sentence reduction. United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022). As the United States Supreme Court recently emphasized, extraordinary and compelling reasons "is a demanding standard." Fernandez v. United States, 146 S.Ct. 1292, 1302 (2026).

Lastly, the court "must . . . find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable," Bethea, 54 F.4th at 831, as well as whether a reduction is "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582 (c)(1)(A)(ii). The court may grant a motion for compassionate release based on circumstances involving "illness, declining health, age, exceptional family circumstances, as well as 'other reasons.'" United States v. Williams, No. ELH-19-286, 2023 WL 4490325, at *7 (D.Md. July 11, 2023) (citing U.S.S.G. § 1B1.13). The other factors include whether the defendant is a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(a)(2).

4

### III.   DISCUSSION

**A.   <u>Administrative Exhaustion</u>**

As to exhaustion, Wiggins has shown, and the Government does not dispute, that he has exhausted his administrative remedies. (<u>See</u> Mot. Compassionate Release ["Mot."] at 2–3, ECF No. 96; Gov't Resp. Opp'n Def.'s Mot. Compassionate Release ["Opp'n"] at 15, ECF No. 106). Specifically, Wiggins submitted a request for compassionate release or reduction of sentence to the Warden of his facility on April 16, 2024. (Apr. 16, 2024 Wiggins Email to Warden at 1, ECF No. 96-1). More than thirty days have elapsed since the Warden received the request, and the Warden has not filed a motion on Wiggins' behalf. (Mem. at 2). Wiggins, therefore, has exhausted his administrative remedies, and his Motion is properly before the Court for consideration on the merits.

**B.   <u>Extraordinary and Compelling Reasons</u>**

As to the merits of Wiggins' Motion, 18 U.S.C. § 3582, as amended, grants courts with independent discretion to decide whether and under what circumstances "extraordinary and compelling reasons" to modify a sentence exist. <u>See</u> <u>Wise v. United States</u>, No. ELH-18-72, 2020 WL 2614816, at *5–7 (D.Md. May 22, 2020). "'Extraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent.' 'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" <u>Fernandez</u>, 146 S.Ct. at 1302–03 (citation omitted) (quoting Webster's Third New International Dictionary 463, 807 (1976)). Whether a circumstance is compelling is context-dependent—courts are not deciding it "in the abstract," instead, "[courts] ask whether it is an especially convincing reason to grant

the relief sought: compassionate release from prison." Id. at 1303. While not binding, Section 1B1.13 of the United States Sentencing Guidelines ("U.S.S.G.") can aid in this analysis. Section 1B1.13 provides examples of what constitutes "extraordinary and compelling reasons" including: medical conditions of the defendant; familial circumstances; whether the defendant is a victim of abuse; and "other reasons" that are "similar in gravity" to the factors listed in U.S.S.G. § 1B1.13(2). United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020).

Here, Wiggins alleges that his exposure to carbon monoxide ("CO") while in BOP custody at the Federal Correctional Institution, McDowell ("FCI McDowell") and BOP's failure to provide a proper medical evaluation and care thereafter qualify as "extraordinary and compelling" reasons for a sentence reduction. (Mem. at 9). Specifically, Wiggins alleges that on August 10, 2021, and likely for at least a day before, while he was incarcerated in Unit C-1 at FCI McDowell, a burst pipe exposed him and other inmates in his unit to an "extremely dangerous" level of CO. (Id.). The Safety Administrator attests that at approximately 11:30 p.m. on August 10, the CO-level reading in Wiggins' unit was 255 parts per million ("ppm").[3] (Day Decl. ¶ 18, ECF No. 100-5). Wiggins fell ill and eventually became unconscious. (Mot. at 8; Mem. at 9). He was initially treated by medical personnel employed at the prison but was later transported to the emergency room of a nearby hospital via ambulance. (Mot. at 8; Mem. at 9). A physician assistant at FCI McDowell attests that "the most seriously ill inmates

---

[3] While reports on the maximum allowable exposure levels vary, the Occupational Safety and Health Administration's ("OSHA") permissible exposure limit is 50 ppm over an eight-hour period. See OSHA, Carbon Monozide Poisoning at 2, https://www.osha.gov/sites/default/files/publications/CARBONMONOXIDE-FACTSHEET.pdf, (last visited July 14, 2026).

were en route to or awaiting transport to the hospital." (Carothers Decl. ¶ 18, ECF No. 100-4).

Wiggins argues that BOP failed to "undertake the type of comprehensive, multidisciplinary medical evaluations" of the inmates exposed to CO either immediately after or since the exposure. (Mem. at 17–18). Wiggins asserts that the CO-exposure "will result in a lifetime of medical ailments," "will shorten the duration of his life," and has "caused him long-term psychological problems (which exacerbated his prior mental health problems)." (Id. at 19–20). The Court finds that these issues do not warrant compassionate release for the reasons set forth below.

First, Wiggins relies on this Court's prior opinion granting compassionate release to another inmate, Rondell Hackett, at FCI McDowell due to the same CO leak. (See United States v. Hackett, No. GLR-18-0086 (D.Md. Sep. 6, 2023) Order ["Hackett Order"], ECF No. 97-3). But that decision is not on point here because the Court did not address whether the CO leak and Hackett's resulting medical ailments were an extraordinary and compelling reason. (See Hackett Order at 3 ("Assuming these medical conditions are serious enough to form the basis for the relief requested . . . . The Court will assume these conditions for which the Defendant was not responsible, merit some but not all of the relief the Defendant has requested.")).

Wiggins' Motion is also distinguishable from Hackett's on the merits. While Wiggins lists many ailments, (see Mot. at 10–11), they are less explicitly linked to the CO leak. Hackett's brief states that since the CO leak, he (1) was diagnosed with a myriad of conditions including hyperthyroidism, major depressive disorder, anxiety disorder, hyperlipidemia, diabetes, myopia tinnitus, headaches secondary to CO

exposure; (2) had "wild and varied" lab reports; and (3) was found to have mild thickening of his paranasal sinus mucosa. Mot. Comp. Release at 6, United States v. Hackett, No. GLR-18-0086 (D.Md. Sep. 6, 2023) (ECF No. 244). "[M]any of these diagnos[es] are common side effects of CO exposure, even down to the seemingly unrelated tinnitus." Id. at 6–7. In contrast, Wiggins mostly stresses the potential future conditions he may face. (See, e.g., Mem. at 19–20 ("[E]xposure to the CO in Unit C will shorten the duration of his life . . . . In addition to the long-term physical health problems that Mr. Wiggins will face . . . . (first and third emphases added))). Wiggins also states the CO leak exacerbated his prior mental health conditions, (id. at 20), but there is no evidence that the CO leak was the cause of these problems. Indeed, the Presentencing Investigation Report ("PSR") states that he has had mental health conditions since he was young. (PSR ¶¶ 196–98, ECF No. 38). Further, medical records from 2023 and 2025 indicate that Wiggins was "coping well." (See 2023 Medical Records at 1, ECF No. 106-7; 2024–2025 Medical Records at 1; ECF No. 106-6). Finally, Hackett's case was primarily decided on the § 3553(a) factors, which weighed in his favor. (See Hackett Order at 3–4). As will be further discussed below, the § 3553(a) factors weigh against Wiggins. In sum, the Court is not bound to follow the same conclusion here as it did in Hackett.

Next, Wiggins alleges that the inadequacy of the medical treatment he has received is a basis for compassionate release. (Mem. at 9). In general, addressing the adequacy of medical treatment is better done through an Eighth Amendment claim rather than a compassionate release motion. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) ("Claims that prison officials failed to provide adequate medical care to an

inmate . . . sound in the Eighth Amendment."). Indeed, Wiggins, along with many other inmates at FCI McDowell who were affected by the CO leak, challenged the medical care provided in a civil case before this Court, which the Court dismissed without prejudice for lack of jurisdiction. See May 28, 2024 Order, Abney v. Fed. Corr. Inst. McDowell, No. JRR-23-0027 (D.Md. May 28, 2024) (ECF No. 69).

Even if these claims were properly before the Court, however, displeasure with medical care is not a sufficiently extraordinary and compelling reason for compassionate release, especially where no evidence shows that the defendant's health is deteriorating. See United States v. Ayyad, No. LKG-24-157, 2024 WL 3424083, at *8 (D.Md. July 15, 2024). Moreover, Wiggins was treated for his immediate symptoms and taken to the emergency room post-exposure. (Reply Gov't. Resp. Opp'n to Def.'s Mot. Comp. Release ["Reply"] at 2–3, ECF No. 112). Wiggins also has been provided with psychiatric medications and had access to general medical evaluations and treatment. (See generally 2021 Medical Records, ECF No. 106-4; 2022 Medical Records, ECF No. 106-5; 2024–2025 Medical Records; 2023 Medical Records). In conclusion, on balance, Wiggins is not entitled to compassionate release on the basis of extraordinary and compelling circumstances. In any event, this Court will consider Wiggins' Motion under the Section 3553(a) sentencing factors.

## C.    Section 3553 Sentencing Factors

Even if a defendant establishes that extraordinary and compelling reasons exist to support a sentence reduction, a court must consider the 18 U.S.C. § 3553(a) factors to determine whether, in its discretion, a reduction of sentence is appropriate. An exhaustive analysis of all the Section 3553(a) factors is not required, nor must a court

address each of the defendant's arguments. See United States v. Jenkins, 22 F.4th 162, 170 (4th Cir. 2021). Instead, the district court must consider the parties' arguments and provide a reasonable basis for its decision. See High, 997 F.3d at 190. The applicable § 3553(a) factors here are: the nature of the offense, the characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, the need to protect the public from further crimes of the defendant, and the need to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a). The Court will review each factor in turn.

### 1.    Nature and Circumstances of the Offense

Beginning with the nature and circumstances of the offense, the gravity of Wiggins' crimes is significant. Wiggins robbed or attempted to rob eleven banks and businesses and brandished and, in two instances, discharged a firearm during the robberies. (PSR ¶ 7).[4] He threatened the victim employees with physical violence and, during one robbery, assaulted a store customer and an employee. (Id.). All of this occurred while he was on federal supervised release after a prior conviction of being a felon in possession of a firearm. (Id.). The nature and severity of Wiggins' crimes, therefore, leans towards a denial of his Motion.

### 2.    Characteristics of the Defendant

Turning to his history and characteristics, the PSR indicates that Wiggins had a difficult childhood. Wiggins' father was not present, and his mother was using drugs.

---

[4] The Court adopted the Presentence Investigation Report without change. (See Statement of Reasons at 1, ECF No. 51).

(Id. ¶ 178). As such, he was raised by his maternal grandmother until age seven, when he was put into the foster care system. (Id. ¶¶ 178–79). He estimated having more than ten foster care placements between the ages of seven and twenty-one. (Id.). Wiggins reports struggling with his mental health since he was young. (Id. ¶¶ 196–98). He attended high school until he was arrested during his senior year, but he has since obtained his GED. (Id. ¶ 205). He has had extensive interaction with the criminal justice system, beginning at age nine. (Id. ¶ 154; see id. at 18–29). His troubled upbringing and youth at the time of his first alleged offense serve as a mitigating factor. However, the extent of his criminal history, with the most recent offense occurring when he was forty years old, counteracts this assertion and weighs in favor of denying the Motion. (See id. at 3, 6, 18–29).

### 3. Need for the Sentence Imposed

Looking next to the need for the sentence imposed to provide just punishment, reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and provide rehabilitative services, the Court is satisfied with the 228-month imprisonment as originally prescribed. (J. at 2).

Wiggins has been in custody since November 16, 2018, (PSR at 1–2), meaning that he has served approximately ninety-one months to date. Thus, Wiggins has served 39.9% of his original sentence. (See J. at 2). Accounting for good time credit, Wiggins' statutory release date is projected to be November 17, 2036, (Mot. at 2; Pub. Info. Inmate Data at 5, ECF No. 106-1), and he has served 42.1% of that term.

Although the Court recognizes the significance of the sentence, it is warranted to convey the seriousness of the crimes committed. That does not mean that Wiggins'

efforts towards rehabilitation while in prison are not commendable or notable. Wiggins has successfully completed twenty-five educational courses, "consistently earned average or above average work evaluations" in his prison jobs, and has not incurred disciplinary infractions since August 31, 2022 (and only minor infractions prior to that). (Mem. at 22). His most recent "violent" score on the BOP's risk assessment indicates also fell within the "low" range. (Def.'s 1st Suppl. Mot. Compassionate Release ["Suppl."] at 1, ECF No. 113; see also Risk Assessment Score ["Score"] at 1–2, ECF No. 113-1). While admirable, these efforts do not move the needle enough, particularly in light of the magnitude of the offense and his long criminal history. The sentence as imposed ensures that Wiggins will continue to receive opportunities for rehabilitation while ensuring the public's safety and deterring him from committing criminal acts in the future.

### 4.    Kind of Sentences Available

As to the next factor, the Court finds that Wiggin's sentence comports with the kind of sentences available. The sentencing guideline imprisonment range, considering Wiggins' offenses, criminal history, and background, was 228 months to 255 months. (PSR ¶ 215). This Court's sentence was within, and on the low end of, the guideline range, and weighs in favor of a denial of the Motion.

### 5.    Need to Avoid Unwarranted Sentencing Disparities

Next, the Court examines the need to avoid unwarranted sentencing disparities. Wiggins contends that a significant reduction of his sentence would not result in an unwarranted sentencing disparity compared to other defendants convicted of robberies "because such defendants have not experienced life-threatening CO-poisoning (and

grossly inadequate follow-up care) while in custody caused by BOP." (Mem. at 23). However, as discussed above, Wiggins was taken to the emergency department post-exposure, has been receiving regular medical care, and has not provided evidence that his health is deteriorating. (Reply at 2–3; see 2023 Medical Records at 1 (indicating Wiggins was "coping well"); see also 2024–2025 Medical Records at 1 (same)). Significantly reducing Wiggins' sentence, therefore, would create an unwarranted sentencing disparity between him and other defendants who were not exposed to CO, weighing in favor of a denial of the Motion.

**6.      Need to Protect the Public**

Wiggins has a history of non-compliance with supervision while incarcerated, (see Mem. at 22), and has indeed engaged in violent criminal behavior while on release, (see, e.g., Plea Agreement at 1, 13). Though Wiggins points to his "violence" score falling in the "low" range, (Suppl. at 1; Score at 2), the Court notes that his most recent score was still on the high end of the range[5] and fluctuated between the "medium" and "high" ranges for years prior to this assessment. (Score at 2). Thus, the Court is not confident that the public will be safe if Wiggins is afforded the relief that he requests.

**7.      Deterrence of Defendant and Others Like the Defendant**

A message needs to be sent that violent criminal conduct has consequences. Wiggins' behavior created a high degree of risk for death or serious injury of innocent victims. Wiggins, therefore, must bear the consequences of his actions.

---

[5] The "low" range for a Male Violent score is between 8 and 24. See BOP, Cut Points Used for PATTERN v. 1.3, https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3, (last visited July 14, 2026). Wiggins' score was a 24. (Risk Assessment Score at 1–2, ECF No. 113-1).

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Wiggins' Motion for Compassionate Release (ECF No. 96). A separate Order follows.

Entered this 14th day of July, 2026.

_____/s/_____
George L. Russell, III
Chief United States District Judge
